OPINIONS OF THE SUPREME COURT OF OHIO

The full texts of the opinions of the Supreme Court of Ohio are being transmitted electronically beginning May 27, 1992, pursuant to a pilot project implemented by Chief Justice Thomas J. Moyer.

Please call any errors to the attention of the Reporter's Office of the Supreme Court of Ohio. Attention: Walter S. Kobalka, Reporter, or Deborah J. Barrett, Administrative Assistant. Tel.: (614) 466-4961; in Ohio 1-800-826-9010. Your comments on this pilot project are also welcome.

NOTE: Corrections may be made by the Supreme Court to the full texts of the opinions after they have been released electronically to the public. The reader is therefore advised to check the bound volumes of Ohio St.3d published by West Publishing Company for the final versions of these opinions. The advance sheets to Ohio St.3d will also contain the volume and page numbers where the opinions will be found in the bound volumes of the Ohio Official Reports.

City of East Cleveland, Appellee, v. East Cleveland Firefighters Local 500, I.A.F.F., Appellant.
[Cite as E. Cleveland v. E. Cleveland Firefighters Local 500, I.A.F.F. (1994), Ohio St.3d .]
Public employment -- State Employment Relations Board's exclusive jurisdiction to determine unfair labor practices does not foreclose parties to a collective bargaining agreement from settling differences in interpreting provisions of their agreement through binding arbitration.
(No. 93-1025 -- Submitted May 24, 1994 -- Decided August 31, 1994.)

Appeal from the Court of Appeals for Cuyahoga County, No. 61942.

In November 1987, plaintiff-appellee, city of East Cleveland ("city"), entered into a collective bargaining agreement ("agreement") with defendant-appellant, East Cleveland Firefighters Local 500, I.A.F.F. ("union"). On November 10, 1988, the acting fire chief of the East Cleveland Fire Department issued "General Order #88-020" ("general order") which declared that "the minimum officer complement per platoon day will be two officers, rather than three." The order further provided that "[o]fficers are restricted from working overtime if they constitute the third or fourth officer of that day."

The union first submitted a grievance concerning the general order in January 1989, to which the fire chief responded. Nothing more was done with respect to this particular grievance, and the union alleged before the arbitrator that it did not pursue the grievance at that time because the parties were in the process of negotiating a new contract.

On November 15, 1989, another grievance was filed by the union's president alleging that the general order violated Article VIII of the agreement concerning overtime. In a memorandum dated November 20, 1989, the fire chief rejected the grievance.

Meanwhile, the record indicates that while the union and city began negotiating a new collective bargaining agreement in

late 1988 to be effective January 1, 1989, negotiations broke down, whereupon the State Employment Relations Board ("SERB") appointed a fact-finder to assist in the negotiations. The fact-finder subsequently issued a report and recommendations which were accepted by the union but rejected by the city. SERB thereafter appointed a conciliator, who through the process of mediation eventually adopted the union's proposal to modify Article VIII of the agreement by adding the words "under the contract effective January 1, 1988" to the language "all overtime will be presented by rank seniority in established previous General Orders and operational directives of the fire department."

With respect to the grievance filed by the union, the parties were unable to resolve it, and therefore proceeded to arbitration in accordance with Section 35.01 of the agreement.

On April 17, 1990, a hearing was held before the arbitrator selected by the parties. Subsequently, in an opinion issued June 4, 1990, the arbitrator found that the general order issued by the fire chief was invalid and should be set aside. In making an award in favor of the union's position, the arbitrator held:

"(1) The Union's grievance be allowed to the extent that officers of the fire department who but for General Order 88-020 otherwise would have been recalled for overtime be compensated for their loss of overtime opportunities;

"(2) That the arbitrator retains jurisdiction to determine back pay in the event the parties are unable to resolve amicably the back pay claim; and

"(3) That the fees and expenses of the arbitrator be borne by the City which is the losing party in this grievance."

Thereafter, the city filed an application with the court of common pleas to vacate or modify the arbitration award pursuant to R.C. 2711.10(D) and 2711.11(B) and (C). However, the trial court denied the application and upheld the arbitrator's decision.

Upon appeal, the court of appeals vacated the judgment of the trial court, and sua sponte dismissed the cause for want of subject-matter jurisdiction. The appellate court noted that the union's grievance against the city was in the nature of an unfair labor practice and that "[a]ny conduct which actually or arguably constitutes an unfair labor practice under R.C. Chapter 4117 is subject to the exclusive jurisdiction of SERB and is not a proper subject for an independent arbitration." The court concluded that "the union's complaint is a subject exclusively within the jurisdiction of SERB because the city's unilateral order to change scheduling of firefighters was arguably a refusal to bargain which only SERB has the power to investigate."

The cause is now before this court pursuant to the allowance of a motion to certify the record.

Duvin, Cahn, Barnard & Messerman, Robert M. Wolff and Marc A. Duvin; and James H. Hewitt III, Director of Law, for appellee.

Mark B. Marein and Mark P. Herron, for appellant.

A. William Sweeney, J.    In our view, the court of

appeals' decision holding that SERB had exclusive jurisdiction of the instant action since it "arguably constitute[d] an unfair labor practice" is clearly erroneous as a matter of law. For the reasons that follow, we reverse the judgment of the court of appeals and reinstate the trial court's judgment.

The record indicates that the union filed a grievance against the city based on the general order issued by the fire chief which impacted upon the ability of union members to obtain overtime work. The collective bargaining agreement entered into by the city and union establishes a four-step process for resolving grievances. The agreement further provides that if an aggrieved party is not satisfied with the disposition of the grievance after the fourth step, he or she can proceed to binding arbitration pursuant to the terms of the agreement. There is nothing in the record to indicate that the parties herein did not follow their own agreement.

In finding that the trial court below and hence, the arbitrator, lacked subject-matter jurisdiction to settle the grievance, the court of appeals relied on several cases for the proposition that SERB has exclusive jurisdiction to hear and decide not only any unfair labor practice charge brought before it, but any conduct or grievance which arguably constitutes an unfair labor practice. See, e.g., Gunn v. Euclid City School Dist. Bd. of Edn. (1988), 51 Ohio App.3d 41, 554 N.E.2d 130, and State ex rel. Ramsdell v. Washington Local School Bd. (1988), 52 Ohio App.3d 4, 556 N.E.2d 197.

We agree that SERB has exclusive jurisdiction to determine the validity, or lack thereof, of unfair labor practices. See Franklin Cty. Law Enforcement Assn. v. Fraternal Order of Police, Capital City Lodge No. 9 (1991), 59 Ohio St.3d 167, 572 N.E.2d 87, where we held in paragraph one of the syllabus: "The State Employment Relations Board has exclusive jurisdiction to decide matters committed to it pursuant to R.C. Chapter 4117." See, also, Franklin Cty. Sheriff's Dept. v. Fraternal Order of Police, Capital City Lodge No. 9 (1991), 59 Ohio St.3d 173, 572 N.E.2d 93, syllabus, where we held that a court of common pleas is without jurisdiction to render a declaratory judgment determining rights established or limited by R.C. 4117.11 "*** where the State Employment Relations Board is asked to make the same determination in the context of an unfair labor practice charge."

However, to hold that only SERB has jurisdiction to hear or determine anything that "arguably" constitutes an unfair labor practice is neither a complete nor totally correct statement of the law set forth in R.C. Chapter 4117 or the decisions of this court. In our view, exclusive jurisdiction to resolve charges of unfair labor practices is vested in SERB in two general areas: (1) where one of the parties files charges with SERB alleging an unfair labor practice under R.C. 4117.11; or (2) a complaint brought before the court of common pleas alleges conduct that constitutes an unfair labor practice specifically enumerated in R.C. 4117.11, and the trial court therefore dismisses the complaint for lack of subject-matter jurisdiction. Neither of these situations is presented in the cause sub judice.

More importantly, however, none of the cases relied on by the city or court of appeals below involved an arbitration

proceeding undertaken pursuant to the terms of a valid collective bargaining agreement entered into by the parties. In its apparent haste to bootstrap the "arguably" language of Gunn to dismiss the instant action, the court of appeals below ignored the clear language of former R.C. 4117.10(A), which stated in pertinent part:

"An agreement between a public employer and an exclusive representative entered into pursuant to Chapter 4117 of the Revised Code governs the wages, hours, and terms and conditions of public employment covered by the agreement. If the agreement provides for a final and binding arbitration of grievances, public employers, employees, and employee organizations are subject solely to that grievance procedure ***."

In practical effect, the court of appeals' opinion, left undisturbed, would effectively eliminate arbitration as a viable alternative to resolving disputes in the public employment sector, since almost any conduct alleged in a grievance raised by aggrieved parties could arguably be categorized as an unfair labor practice.1

The General Assembly's vesting of SERB with exclusive jurisdiction to determine unfair labor practices defined in R.C. 4117.11 was never meant to foreclose parties to a collective bargaining agreement from settling differences in interpreting provisions of their agreement through the process of binding arbitration, especially given the clear language of R.C. 4117.10(A) set forth above.

As this court stated long ago in Corrigan v. Rockefeller (1902), 67 Ohio St. 354, 367, 66 N.E. 95, 98: "The law favors the amicable adjustment of difficulties, and arbitration has been favored by the courts in this state from early times." Accord Campbell v. Automatic Die & Products Co. (1954), 162 Ohio St. 321, 329, 55 O.O. 195, 198, 123 N.E.2d 401, 405: "It is the policy of the law to favor and encourage arbitration and every reasonable intendment will be indulged to give effect to such proceedings and to favor the regularity and integrity of the arbitrator's acts."

In any event, adoption of the court of appeals' rationale cannot be sanctioned or explained under the policy of law set forth above. Carrying the appellate court's decision to its logical extreme, every grievance filed by an aggrieved party to a collective bargaining agreement could, as mentioned before, arguably be characterized as an unfair labor practice. Under such a standard, SERB would be forced to decide every grievance arising out of disputes related to the interpretation of terms to a collective bargaining agreement, no matter how innocuous they may be, and notwithstanding any binding arbitration process established in the agreement entered into by the parties thereto. Since the court of appeals misconstrued the law in this context, its decision cannot stand.

Therefore, based on all the foregoing, we reverse the judgment of the court of appeals and reinstate the trial court's judgment.

Judgment accordingly.

Moyer, C.J., Douglas, Resnick, F.E. Sweeney and Pfeifer, JJ., concur.

Wright, J., dissents.

FOOTNOTE:

1 The union correctly points out that the grievance it submitted was a proper subject for arbitration, since the conduct of the city in refusing to rescind the terms of the general order can just as easily be characterized as an "impasse" in negotiations, as it could be a "refusal to bargain" by the city. See, e.g., Teamsters Local Union No. 175 v. Natl. Labor Relations Bd. (C.A.D.C. 1986), 788 F.2d 27, 30: "Impasse is defined as the deadlock reached by bargaining parties 'after good-faith negotiations have exhausted the prospects of concluding an agreement.' [Taft Broadcasting Co. (1967), 163 N.L.R.B. 475, 478.] This court has described the situation as one in which 'there was no realistic prospect that continuation of discussion at that time would have been fruitful.' [Am. Fedn. of Television & Radio Artists v. Natl. Labor Relations Bd. (C.A.D.C. 1968), 395 F. 2d 622, 628.]"

Wright, J., dissenting. It is my belief that the State Employment Relations Board ("SERB") has exclusive jurisdiction in this matter and, therefore, I must respectfully dissent.

At issue here is the city of East Cleveland's unilateral imposition of a change in its overtime pay policy. The city's action was implemented neutrally and was not directed toward a particular individual or group of individuals.

Both parties agree that R.C. Chapter 4117 grants exclusive jurisdiction to SERB regarding matters involving an unfair labor practice. Franklin Cty. Law Enforcement Assn. v. Fraternal Order of Police, Capital City Lodge No. 9 (1991), 59 Ohio St.3d 167, 572 N.E.2d 87 ("FOP"). In FOP, we recognized that "[t]he [SERB] statutes pertaining to unfair labor practices do not provide for the filing of an original complaint in common pleas court." Id. at 169, 572 N.E.2d at 90. Moreover, SERB's subject matter jurisdiction cannot be waived, either by agreement or by failure to raise the issue below. See Fox v. Eaton Corp. (1976), 48 Ohio St.2d 236, 2 O.O.3d 408, 358 N.E.2d 536, and Gates Mills Invest. Co. v. Parks (1971), 25 Ohio St.2d 16, 54 O.O.2d 157, 266 N.E.2d 552. Indeed, the court itself may raise the issue at any stage of the proceedings, including appeal. Fox, supra. Any action taken by a court which lacks the proper subject matter jurisdiction is void.

In order to avoid SERB's exclusive jurisdiction, the union contends that the city's conduct did not implicate a matter over which SERB had jurisdiction. The union denies that its action raises a question of a refusal to bargain, even though its grievance, in effect, amounts to a claim that the city's unilateral modification of the terms and conditions of employment was a refusal to bargain. I cannot disregard this factual background.

We faced a very similar question in FOP, supra. In that case we reasserted the legal principle that "'[w]here a statute which creates a new right, prescribes the remedy for its violation, the remedy is exclusive; but when a new remedy is given by statute for a right of action existing independent of it, without excluding other remedies already known to the law, the statutory remedy is cumulative merely, and the party may pursue either at his option.'" Id., 59 Ohio St.3d at 169, 572 N.E.2d at 89, quoting Zanesville v. Fannan (1895), 53 Ohio St.

605, 42 N.E. 703, paragraph two of the syllabus.  We went on to find that R.C. Chapter 4117 "created a series of new rights and set forth the remedies and procedures to be applied regarding those rights."  FOP at 170, 572 N.E.2d at 90.  In light of that holding we unequivocally stated that "if a party asserts claims that arise from or depend on the collective bargaining rights created by R.C. Chapter 4117, the remedies provided in that chapter are exclusive."  Id. at 171, 572 N.E.2d at 91.  I find FOP to be the controlling authority in the case at issue.

As in FOP, the union here is asserting collective bargaining rights created by R.C. Chapter 4117.  Thus, because the union's claims are "dependent on the framework established in R.C. Chapter 4117," the union is "limited to the remedies and procedures provided in that chapter ***."  Id. at 171, 572 N.E.2d at 92.  Therefore, in my judgment, SERB has exclusive jurisdiction to decide the matter we are considering today.

The concerns raised by the majority that upholding the court of appeals' opinion "would effectively eliminate arbitration as a viable alternative to resolving disputes in the public employment sector" and that "SERB would be forced to decide every grievance arising out of disputes related to the interpretation of terms to a collective bargaining agreement" are, to say the least, overstated.  The types of claims from which the majority seeks to protect SERB are the fundamental types of issues for which the General Assembly designed R.C. Chapter 4117.  "That chapter was meant to regulate in a comprehensive manner the labor relations between public employees and employers."  (Emphasis added.)  FOP, 59 Ohio St.3d at 171, 572 N.E.2d at 91.

Accordingly, I would affirm the judgment of the court of appeals.